J-S57019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                               :              PENNSYLVANIA
                               :
               v.              :
                               :
                               :
                               :
TERRENCE FULLER,               :
                               :
          Appellant            :         No. 484 EDA 2017

Appeal from the Judgment of Sentence January 19, 2017
in the Court of Common Pleas of Montgomery County
Criminal Division at No(s):  CP-46-CR-0003819-2016

BEFORE:  GANTMAN, P.J., PANELLA, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:            **FILED DECEMBER 19, 2017**

Terrence Fuller ("Fuller"), *pro se*,[1] appeals from the judgment of sentence entered following his conviction of two counts each of possession of a controlled substance, possession with intent to deliver a controlled substance, and use of drug paraphernalia.[2]  We affirm.

In its Opinion, the trial court summarized the factual and procedural history underlying the instant appeal, which we adopt as though fully restated herein.  **See** Trial Court Opinion, 5/4/17, at 1-3.

Fuller presents the following claims for our review:

---

[1] Fuller was permitted to proceed *pro se*, following a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

[2] 35 P.S. § 780-113(a)(16), (30), (32).

> 1. Did the suppression court err as a matter of law by concluding that [Fuller] was subjected to an investigative detention and not a mere encounter[,] which ripened to a warrantless arrest with probable cause?
>
> 2. Was Officer [Carl] Robinson[, Jr.'s ("Officer Robinson")] reasonable suspicion for detaining [Fuller] based on a mere hunch?

Brief for Appellant at 4.

In his appellate brief, Fuller addresses his challenges to the denial of his suppression Motion together. Fuller claims that the trial court improperly denied his Motion to suppress the evidence seized following his detention. *Id.* at 14. According to Fuller, there was no weapon involved in the simple assault being investigated by police. *Id.* at 10. Further, police officers never told him why he was being detained, and the officers should have brought the victim of the assault to the scene for identification purposes. *Id.* at 11. Fuller argues that as he lawfully exited the back seat of a vehicle, he was immediately told to raise his hands and get on the ground, and then was placed in handcuffs. *Id.* Fuller asserts that "this was not an investigatory detention that ripened into probable cause[,]" and that "any reasonable [*sic*] minded person would believe that they are under arrest." *Id.* Fuller contends that the police officer's observation was based on nothing more than a "hunch," and that simply moving around in the back seat of a vehicle does not give rise to a reasonable suspicion of criminal activity. *Id.* at 12. Fuller points out that he was not charged or identified as a suspect in the simple assault, that the vehicle in which he was a passenger

was legally parked, and that Officer Robinson testified that he detained Fuller based on a "hunch." *Id.* at 12-13. Under these circumstances, Fuller claims that the evidence seized from the vehicle should have been suppressed. *Id.* at 14.

In its Opinion, the trial court set forth the appropriate standard of review, addressed Fuller's claims, and concluded that they lack merit. *See* Trial Court Opinion, 5/4/17, at 4-6. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis as to Fuller's claims of error. *See id.* We additionally point out, in detail, the evidence supporting the trial court's determination that Officer Robinson had conducted an investigatory stop of Fuller, supported by reasonable suspicion, and a protective sweep of the vehicle.

At the suppression hearing, Norristown Police Officer Kevin Fritchman ("Officer Fritchman") testified that, while patrolling in his vehicle, he observed an older male being punched by two other males. N.T., 1/17/17, at 7. Upon stopping his vehicle, two of the males "took off running." *Id.* Upon Officer Fritchman's inquiry, the older man told Officer Fritchman that he had been assaulted. *Id.*

Officer Fritchman described one of the two assailants as a short, black male with a large beard. *Id.* Officer Fritchman followed the two assailants in his vehicle. *Id.* at 8. While doing so, Officer Fritchman "called it out on the radio that I just witnessed an assault." *Id.* Officer Fritchman indicated

that the two men "ran westbound towards Church Street and they made a right onto Church going north." *Id.* Over the radio, Officer Fritchman described the one assailant as a short, black male with a large beard. *Id.* at 8-9. When Officer Fritchman turned his vehicle onto Church Street, the two men were no longer visible. *Id.* at 9. Thereafter, Officer Fritchman came upon the location where Officer Robinson had stopped Fuller. *Id.* at 10. Officer Fritchman observed Fuller exit from the vehicle, and further observed Officer Robinson walk up to that vehicle. *Id.*

Officer Robinson testified as to his background and credentials for "[d]rug training and violent crime training." *Id.* at 19. Officer Robinson testified that he had heard Officer Fritchman's radio description of having witnessed two black males "beating up another black male at the corner of East Marshall and Dekalb Street." *Id.* at 20. According to Officer Robinson, Officer Fritchman stated that a shorter black male with a full beard "took off running west towards Church Street." *Id.* Officer Robinson then heard Officer Fritchman state his belief that one of the subjects "ran out to the 600 block of Swede Street." *Id.* at 21. When Officer Robinson drove onto the 600 block of Swede Street, he observed a silver Chrysler PT Cruiser parked on the west side of the street, with its lights off and three subjects in the car. *Id.* Officer Robinson described the vehicle's occupants as "a white female, an older black male, and a black male with a full beard in the back seat." *Id.* There is no evidence that Fuller owned the vehicle.

Officer Robinson pulled his vehicle in front of the parked PT Cruiser, with his headlights shining into the vehicle. *Id.* at 21-22. When he did so, he observed Fuller, sitting in the back passenger seat, bending down towards the floor "like he was concealing something under the front passenger seat." *Id.* at 22, 23. Officer Robinson stated that he and Fuller exited their vehicles at the same time. *Id.* at 43. As Fuller began walking away from Officer Robinson, the officer drew his weapon and ordered Fuller to "come here," and then ordered Fuller to get down on the ground. *Id.* As soon as Officer Fritchman arrived at the scene, Officer Robinson testified that he "went to the back seat of the car where I saw him reaching around and I immediately observed two sandwich bags. One contained a large quantity of crack cocaine and the other one had packets of heroin and powder cocaine in it." *Id.* at 22. Officer Robinson testified that he was concerned for his safety, as Fuller "might have stashed a weapon under the front seat of that car." *Id.* at 23. The Commonwealth then presented a video recording from the police vehicle's dash camera. *Id.* at 23-34. Officer Robinson narrated the video, which depicted Fuller bending down towards the floor of the vehicle. *Id.* at 32. When asked why he had detained Fuller, Officer Robinson testified that he "believed [Fuller] was involved in the assault that Officer Fritchman called out." *Id.* at 23.

On cross-examination, Officer Robinson clarified that he approached the vehicle after securing Fuller, on the ground in handcuffs. *Id.* at 49.

Officer Robinson then opened the back passenger door, while the driver and front-seat passenger remained in the vehicle, with their hands in view. ***Id.*** at 55. Officer Robinson testified that he stopped Fuller because Fuller matched the description of the assailant, and was in the back seat of a parked vehicle, in the area to which the assailant had just run. ***Id.*** at 58.

Thus, the trial court's findings are supported by the evidence of record, and we discern no error of law in the conclusions reached by the trial court. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2017

CLERK OF COURTS
OFFICE
MONTGOMERY COUNTY
PENNA.

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

2017 MAY -5 PM 3: 59

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : : : | NO. 3819-16 |
| | : | 484 EDA 2017 |
| v. | : | ↳ |
| | : | |
| TERRENCE FULLER | : | |

**O P I N I O N**

**SILOW, J.**                                                                 **MAY ___, 2017**

Terrence Fuller appeals from the judgment of sentence imposed after a bench trial at which he was found guilty of possession with intent to deliver and related offenses. For the reasons set forth below, the judgment of sentence should be affirmed.

## I.    FACTUAL AND PROCEDURAL HISTORY

Officer Kevin Fritchman was driving an unmarked patrol car in Norristown, Montgomery County, around 10:30 p.m., on April 1, 2016, when he saw two men assaulting an elderly man.[1] (N.T., 1/17/17, p. 7) The officer made a U-turn, at which time the two men fled. *Id.* Officer Fritchman gave chase in his vehicle and radioed a report of his observations, describing one of the assailants as a short black male with a large beard. *Id.* at 8. He also noted the direction in which the two men had fled. *Id.* at 9.

---

[1] The factual background is derived from the testimony of the Commonwealth's witnesses at the suppression hearing, both of whom this court found testified credibly.



Officer Carl Robinson Jr. received the radio report while driving in his own unmarked police vehicle. Approximately one minute later, and about a block-and-a-half away from the assault, Officer Robinson saw three people sitting in a parked vehicle with the headlights off. *Id.* at 21, 37. The vehicle was located in the area toward which Officer Fritchman had stated the assailants had run and no one else was on the street. Officer Robinson shined the headlights of his patrol car toward the vehicle and observed a shorter black male with a beard in the backseat. *Id.* at 21-22. The backseat passenger (hereinafter "defendant") made a furtive movement, reaching down toward the floor of the vehicle. *Id.* at 22. Defendant then got out of the vehicle and started walking away. *Id.* Officer Robinson testified that the vehicle was parked in a high-crime area, he knows through his training and experience that suspects often conceal drugs and guns, he suspected at the time that defendant had been involved in the assault and he was concerned for his safety because he believed defendant may have stashed a weapon under the front seat. *Id.* at 22-23, 35-36.

Officer Robinson ordered defendant to stop and drew his firearm for officer safety. Officer Fritchman, who since had arrived on the scene, detained defendant while Officer Robinson looked into the vehicle where he had seen defendant reach down. *Id.* at 22. He observed two sandwich bags containing what appeared to be cocaine and heroin. *Id.*

2

Defendant was placed under arrest and later charged with possession with intent to deliver cocaine, possession of heroin, possession of cocaine and two counts of drug paraphernalia.[2] He filed a pre-trial motion to suppress, which this court denied after a hearing. Defendant then proceeded to a trial by judge and the court found him guilty of all charges. He received a total sentence of two to four years in prison.

Defendant did not file a post-sentence motion. He timely appealed and filed a counseled concise statement of errors in accordance with Pennsylvania Rule of Appellate Procedure 1925(b). The Pennsylvania Superior Court subsequently ordered a *Grazier* hearing and this court determined that defendant knowingly, intelligently and voluntarily waived his right to be represented by counsel. This court also granted defendant's oral request to file a supplemental concise statement.

Defendant filed a supplemental *pro se* concise statement on April 24, 2017, that essentially restates the concise statement filed by counsel. Three days later he filed an additional supplement to the *pro se* concise statement.

## II. ISSUES

Defendant raises the following issues in his supplemental *pro se* concise statements:

> The trial court erred in denying [defendant's] suppression motion under [the] unique facts and circumstances of this case. The police did not have reasonable suspicion to detain [defendant] in such an

---

[2] The Commonwealth also charged defendant with possession with intent to deliver heroin, but withdrew that count at trial.

3

intrusive manner, nor did they have probable cause to search the vehicle. The car was legally parked and the occupants were doing nothing wrong. (N.T. 1-17-17, p. 57 lines 17-22). Neither was an investigative detention warranted nor was a subsequent search of the vehicle warranted. The only intrusion necessary was a mere encounter or request for information. The subsequent search of the vehicle which led to the seizure of evidence was not justified. [Defendant] raises the challenges under the United States and Pennsylvania Constitution[s].

Did the Lower Court err as a matter of law by concluding that [defendant] was subjected to an investigative detention and not an actual arrest without probable cause?

## III. DEFENDANT IS NOT ENTITLED TO RELIEF ON HIS CHALLENGE TO THE DENIAL OF HIS MOTION TO SUPPRESS.

Defendant's supplemental concise statements, when read in conjunction, challenge this court's conclusion that he was subjected to a lawful investigatory detention that ripened into probable cause to arrest. His challenge does not warrant relief.

The Pennsylvania Superior Court's standard of review when assessing a challenge to the denial of a motion to suppress

> is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, [the Superior Court] may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the Superior Court is] bound by these findings and may reverse only if the court's legal conclusions are erroneous.

4

*Commonwealth v. Simmen*, 58 A.3d 811, 814 (Pa. Super. 2012) (quoting

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-84 (Pa. Super. 2012) (citations

omitted). "The suppression court has sole authority to assess the credibility of

the witnesses and is entitled to believe all, part or none of the evidence

presented." *Simmen*, 58 A.3d at 817.

Pennsylvania recognizes three levels of police interactions with civilians:

mere encounter; investigative detention; and arrest. An officer is permitted to

detain an individual in order to conduct an investigative detention where the

officer

> reasonably suspects that the individual is engaging in
> criminal conduct. This standard, less stringent than
> probable cause, is commonly known as reasonable
> suspicion. In order to determine whether the police
> officer had reasonable suspicion, the totality of the
> circumstances must be considered. In making this
> determination, [courts] must give due weight to the
> specific reasonable inferences the police officer is
> entitled to draw from the facts in light of his
> experience. Also, the totality of the circumstances test
> does not limit [the] inquiry to an examination of only
> those facts that clearly indicate criminal conduct.
> Rather, even a combination of innocent facts, when
> taken together, may warrant further investigation by
> the police officer.

*Commonwealth v. Foglia*, 979 A.2d 357, 360 (Pa. Super. 2009) (internal

citations and quotation marks omitted). The Superior Court has found that an

extremely nervous individual's furtive movements of leaning forward and

appearing to conceal something under his seat during a nighttime stop

provides a sufficient basis for a protective sweep of the area in which the

individual was seated. *Commonwealth v. Buchert*, 68 A.3d 911, 916-17 (Pa.

5

Super. 2013). "Evasive behavior also is relevant in the reasonable-suspicion mix." *Foglia*, 979 A.2d at 361.

Here, approximately a minute after receiving a report of an assault that had been witnessed by a fellow officer, and while in a high crime area at nighttime about a block away from where the assault had occurred and in the general location where the two assailants had run, Officer Robinson saw a man matching the description of one of the assailants sitting in the back seat of a parked vehicle. Immediately upon Officer Robinson shining his headlights on the vehicle, which also contained two front seat passengers, the back seat passenger reached down under the seat in front of him. The back seat passenger then got out of the car and began to walk away.

The totality of these circumstances gave Officer Robinson ample reasonable suspicion to believe the back seat passenger was engaged in criminal activity. He, therefore, conducted a lawful detention for investigative purposes. Officer Robinson, for the purpose of officer safety, then lawfully checked the back seat area of the vehicle where defendant had reached down. *See Buchert, supra*. The controlled substances and paraphernalia found in that area were lawfully seized during the protective sweep. Only then was defendant placed under arrest.

6

## IV.  CONCLUSION

Based upon the foregoing, this court properly denied defendant's motion to suppress.  As such, his judgment of sentence should be affirmed.

BY THE COURT:

_____

GARY S. SILOW,            J.

Sent on 5/5/17
to the following:
Clerk of Courts
District Attorney's Office, Appeals Division
Terrence Fuller, *pro se* (GZ-7578)
        SCI Graterford
        PO Box 244
        Graterford, PA  19426

I hereby certify that I have forwarded a copy of the within Opinion to defendant at the above address by certified mail return receipt requested and regular mail.

_____
Judicial Secretary